831 F.2d 297
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James Gregory TANCEUSZ, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 86-2184.
 United States Court of Appeals, Sixth Circuit.
 Oct. 13, 1987.
 
 Before CORNELIA G. KENNEDY and KRUPANSKY, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant James Tanceusz ("appellant") appeals the District Court's denial of his motion to vacate his sentence under the habeas corpus provisions of 28 U.S.C. Sec. 2255, and to withdraw his guilty plea. Appellant raises three issues on appeal: 1) whether his guilty plea was voluntary and intelligent where his lawyer failed to inform him of an impending change in the parole guidelines; 2) whether use of the revised parole guidelines violates his right against ex post facto laws; 3) whether his guilty plea should be withdrawn because the trial court did not fully comply with Fed.R.Crim.P. 11. He requests that this Court remand the case to the District Court for an evidentiary hearing.
 
 
 2
 On June 27, 1984, the appellant entered into a plea agreement whereby three counts of a six-count indictment against him would be dismissed if he plead guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846, one count of income tax evasion in violation of 26 U.S.C. Sec. 7201, and one count of conspiracy to export currency in violation of 18 U.S.C. Sec. 371 and 31 U.S.C. Sec. 5316. On September 5, 1984, the appellant was sentenced to ten years' imprisonment on the cocaine distribution count, five years' imprisonment on the tax evasion count, and five years' imprisonment on the exportation of currency count, all sentences to run concurrently.
 
 
 3
 On September 3, 1986, the appellant moved the District Court to vacate his sentence and withdraw his guilty plea. He contended that his guilty plea was not voluntarily and intelligently made for two reasons, first, because the District Court did not inform him that by pleading guilty he was waiving his right to confront those witnesses testifying against him in a trial by jury, and second, because his attorney did not inform him of a proposed change in the U.S. Parole Commission's Paroling Policy Guidelines, 28 C.F.R. Sec. 2.20 ("parole guidelines"). His attorney had advised him that the guidelines in effect at the time the appellant committed his crime indicated that the customary range of time served by someone in appellant's category of offenses was forty to fifty-two months. However, new parole guidelines, which went into effect in October of 1984, indicated that the customary minimum amount of time served by someone in the appellant's category of offenses was one hundred months.
 
 
 4
 The District Court denied the appellant's motion on October 27, 1986, finding that neither of the two reasons the appellant put forth was sufficient to vacate his sentence. Joint Appendix at 44-49. On December 8, 1986, the court denied the appellant's motion for a rehearing of the previous motion. Joint Appendix at 51. Appellant appeals.
 
 I.
 
 5
 Appellant contends that his lawyer's failure to inform him of a change in the U.S. Parole Commission's parole guidelines amounted to ineffective assistance of counsel, such that his guilty plea was not voluntary and intelligent. His attorney stated in an affidavit that he had advised the appellant that in all probability he would serve at most between forty and fifty-two months. Joint Appendix at 41. The attorney also stated that after the appellant plead guilty but prior to sentencing he learned that the parole guidelines were to be changed and that the new guidelines indicated that the appellant could expect to serve more than one hundred months. He did not, however, inform his client of the change until the day of sentencing. Id. The appellant alleges that had his attorney told him of the change in the guidelines he would not have plead guilty but instead would have elected to go to trial. Joint Appendix at 43. His attorney's failure to tell him of the change, he alleges, amounted to ineffective assistance of counsel, and as such his guilty plea was not entered into voluntarily and intelligently.
 
 
 6
 The appellant's claim must be separated into two questions. First, whether he voluntarily and intelligently entered his guilty plea on June 27, 1984, and second, whether his attorney's failure to tell him of the pending changes in the parole guidelines before sentencing denied the appellant effective assistance of counsel.
 
 
 7
 Addressing the first question, pleas of guilty "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970) (footnote omitted). A guilty plea is involuntary if it is made in ignorance of its consequences, including the length of any possible sentence. United States v. Ammirato, 670 F.2d 552, 555 (5th Cir. Unit B 1982).
 
 
 8
 Appellant argues that since he was unaware of the impending changes in the parole guidelines he did not voluntarily and intelligently enter his guilty plea. At the time he entered his plea, however, the Parole Commission had not yet adopted the guidelines, but had merely proposed them. We find that proposed changes in parole guidelines are not the sort of circumstance that renders a guilty plea involuntary. After all, details of parole eligibility are merely collateral, not direct, consequences of a plea. Hill v. Lockhart, 731 F.2d 568 (8th Cir.), aff'd by an equally divided court, 764 F.2d 1279 (1984) (en banc), aff'd on other grounds, 474 U.S. 52 (1985). The parole guidelines are merely that; the Parole Commission retains full discretion to make parole decisions outside the guidelines when circumstances warrant. 28 C.F.R. Sec. 2.20(c). Therefore, any term of incarceration that the appellant may have anticipated was merely an expectation, and we agree with the District Court that "vacating a sentence based on unfulfilled expectations that were not even part of the plea agreement would not be sound judicial policy." Joint Appendix at 48 (citing Little v. Allsbrook, 731 F.2d 238, 242 (4th Cir.1984)).
 
 
 9
 The second question is whether the failure of appellant's attorney to tell him of the impending changes in the parole guidelines after the appellant plead guilty denied the appellant effective assistance of counsel. On August 29, 1984, well after the appellant had plead guilty, the Parole Commission announced that they were adopting the proposed changes in the parole guidelines and that the new guidelines would become effective on October 1, 1984. 49 Fed.Reg. 34,206 (1984). Although the appellant's attorney learned of the impending changes before the appellant was sentenced on September 5, 1984, he did not immediately inform his client of the changes.
 
 
 10
 The two part test of Strickland v. Washington, 466 U.S. 668 (1984) applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52 (1985). Under the first part, the challenger must show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Under the second part, the challenger must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.
 
 
 11
 We find that the appellant has failed to meet the second part of the Strickland test. By the time the Parole Commission announced the adoption of the proposed changes the appellant had already entered his guilty plea and it was within the discretion of the District Court to allow him to withdraw it. Even had the appellant's attorney told him of the changes before sentencing the appellant would not have had the right to withdraw his plea. Consequently, we find that the appellant's claim of ineffective assistance of counsel fails because he has not shown that the outcome of the proceedings would have been different had he known of the impending changes in the parole guidelines.[1]
 
 II.
 
 12
 The appellant's second issue is whether the application of the new parole guidelines violates the ex post facto clause of article 1, section 9 of the United States Constitution. Calder v. Bull, 3 U.S. (3 Dall.) 386 (1798) stated that the ex post facto clause includes "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Id. at 390. To fall within the ex post facto clause, the law must be retrospective and it must disadvantage the offender affected by it. Miller v. Florida, No. 86-5344, slip op. at 7 (U.S. June 9, 1987). We find that the application of the new parole guidelines to the appellant does not violate the ex post facto clause.
 
 
 13
 There is no dispute in this case that the guidelines are retrospective, the question is whether they are laws, subject to the ex post facto clause. Eight courts of appeals and one Supreme Court Justice have found that the application of revised parole guidelines to persons who committed crimes before the imposition of the new guidelines does not violate the ex post facto clause.[2] In Ruip v. United States, 555 F.2d 1331 (6th Cir.1977) the Sixth Circuit stated that although "parole consideration is a part of the law annexed to the crime," application of revised parole guidelines did not violate the ex post facto clause because "[t]hese guidelines are not law, but guideposts which assist the Parole Commission ... in exercising its discretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines." Id. at 1335. We adopt this reasoning, which is consistent with the majority of the cases that have decided the issue.
 
 
 14
 We distinguish Miller. In Miller the Supreme Court held that sentencing guidelines, developed by the Florida Supreme Court pursuant to a Florida statute, violated the ex post facto clause when applied to the petitioner. The guidelines gave scores for particular offenses, and sentence ranges for particular scores. The sentencing judge had discretion to fix the sentence within the range without a written explanation. To depart from the guidelines' range, however, the sentencing judge had to give clear and convincing reasons in writing for doing so, and the reasons had to be based on facts which had been proven beyond a reasonable doubt. The Florida legislature adopted the guidelines.
 
 
 15
 Miller 's holding does not affect the parole guidelines cases, however. The Court expressly distinguished the parole guidelines cases on three grounds: 1) unlike parole guidelines, the revised sentencing guidelines involved in Miller were law and had the force and effect of law; 2) the sentencing guidelines were more than mere "flexible guideposts," they seriously restricted the sentencing judge's discretion; and 3) the sentencing guidelines directly and adversely affected the sentence received by the petitioner. Miller, slip op. at 11-12.
 
 III.
 
 16
 The third issue raised by the appellant is whether his guilty plea was voluntarily and intelligently made given that the District Court failed to elicit from him a waiver of his right to a jury trial or of his right to confront witnesses against him. Fed.R.Crim.P. 11(c)(4) requires the court to inform the defendant "that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial." In Boykin v. Alabama, 395 U.S. 238 (1969) the Supreme Court stated:
 
 
 17
 Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a ... trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment.... Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record.
 
 
 18
 Id. at 243 (citations omitted). However, "Boykin does not require separate enumeration of each right waived and separate waivers as to each." Fontaine v. United States, 526 F.2d 514, 516 (6th Cir.1975), cert. denied, 424 U.S. 923 (1976). The rule requires only substantial compliance. Fed.R.Crim.P. 11(h); United States v. Stead, 746 F.2d 355, 357 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985). The District Court and the appellant had the following conversation with respect to his constitutional rights at the time he entered his guilty plea:
 
 
 19
 THE COURT: Do you understand if you do not plead guilty to either of these, any of these counts, we'd go to trial on these counts and the other counts of the indictment?
 
 
 20
 A. Yes, your Honor.
 
 
 21
 THE COURT: And that at trial you'd be represented by your lawyer and your lawyer could cross-examine witnesses the Government would produce in order to prove you are guilty, do you understand that?
 
 
 22
 A. Most assuredly.
 
 
 23
 THE COURT: At that trial you could produce witnesses on your own behalf and use the subpoena power of the Government to get them to come in and testify, do you understand that?
 
 
 24
 A. Yes, your Honor.
 
 
 25
 THE COURT: At that trial you could testify yourself and if you didn't want to testify the Jury would be told they were not to infer your guilt from the fact that you did not testify. Are you aware of that?
 
 
 26
 A. Very aware, your Honor.
 
 
 27
 Joint Appendix at 11. We agree with the District Court that it substantially complied with Fed.R.Crim.P. 11(c)(4). The appellant is not ignorant or uneducated, he has both an undergraduate degree and a graduate degree from the University of Michigan. Although he did not expressly waive any of his rights, it is clear from the conversation that he understood that he was giving them up by pleading guilty. Consequently, we find that the appellant entered his guilty plea voluntarily and intelligently.
 
 IV.
 
 28
 Finally, the appellant alleges that an evidentiary hearing is necessary to make the appropriate factual determinations for his section 2255 motion. On this appeal this Court has taken the facts as the appellant has asserted. Consequently, an evidentiary hearing is not necessary. See Hill, 731 F.2d at 572-73 (an evidentiary hearing is not required where the issues can be resolved on the basis of the record).
 
 
 29
 Accordingly, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 We make no finding as to whether the failure of appellant's attorney to tell him of the changes in the parole guidelines was objectively unreasonable, fulfilling the first part of the Strickland test
 
 
 [2]
 Portley v. Grossman, 444 U.S. 1311, 1312-13 (1980) (J. Rehnquist, in chambers); Yamamoto v. United States Parole Comm'n, 794 F.2d 1295, 1297-98 (8th Cir.1986); Inglese v. United States Parole Comm'n, 768 F.2d 932, 935-36 (7th Cir.1985); DiNapoli v. Northeast Regional Parole Comm'n, 764 F.2d 143, 146 (2d Cir.), cert. denied, 106 S.Ct. 568 (1985); Dufresne v. Baer, 744 F.2d 1543, 1549-50 (11th Cir.1984), cert. denied, 106 S.Ct. 61 (1985); Roth v. United States Parole Comm'n, 724 F.2d 836, 840 (9th Cir.1984); Stroud v. United States Parole Comm'n, 668 F.2d 843, 847 (5th Cir.1982); Warren v. United States Parole Comm'n, 659 F.2d 183, 193-97 (D.C.Cir.1981), cert. denied, 455 U.S. 950 (1982); Ruip v. United States, 555 F.2d 1331, 1335-36 (6th Cir.1977)